UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| JEREMIAH GAINES and NEHEMIAH GAINES, minor children by Guardian Ad Litem, RANEE GAINES and SHELDON GAINES, | ) ) ) ) ) ) | 3:04-CV-00541-LRH-RAM |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| DOUGLAS COUNTY SCHOOL DISTRICT, | ) ) | |
| Defendant. | ) ) | |

Presently before the court is Plaintiffs Jeremiah Gaines, Nehemiah Gaines, Ranee Gaines, and Sheldon Gaines' (collectively "Plaintiffs") "Joint Motion for Reasonable Attorneys' Fees and Costs" (#73[1]). Defendant Douglas County School District ("District") has filed an opposition (#76) to which Plaintiffs replied (#78).

**I.    Facts and Procedural History**

This is a civil action brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482.[2] Jeremiah Gaines ("Jeremiah") and Nehemiah Gaines ("Nehemiah") are twin brothers with autism who were born on April 15, 2000.

---

[1] Refers to the court's docket entry number.

[2] Plaintiffs also alleged a violation of section 504 of the Rehabilitation Act, 29 U.S.C. §§ 701-97, but do not seek attorneys fees with regard to this claim.

In 2003, Plaintiffs sought from the District evaluations, special education and related services for the twins.[3] On December 4, 2003, after six months of attempting to obtain the desired evaluations and services, Plaintiffs requested a due process hearing. In their request for a hearing, Plaintiffs argued the District failed to provide the twins with a Free Appropriate Public Education ("FAPE") in violation of IDEA in the following ways: (1) failing to fulfill its Child Find duties; (2) failing to provide Plaintiffs with written and verbal notice of IDEA's Procedural Safeguards and their rights at the time and in the manner mandated by IDEA and Nevada law; (3) failing to provide Plaintiffs with written notice of the District's proposals and refusals concerning the twins' FAPEs at the times and in the manner required by IDEA and Nevada law; (4) failing to develop, complete and implement separate individualized education programs ("IEPs") for the twins; and (5) failing to pay the costs of the evaluations, assessments, and the special education and related services necessary to meet the twins' individual educational needs.[4]

A five-day hearing was held from February 16, 2004, to February 20, 2004. The Hearing Officer ("HO") found that the District committed procedural violations of IDEA denying the twins a FAPE by (1) failing to identify the twins as developmentally delayed in a timely manner and (2) failing to provide Plaintiffs with a notice of their rights in a timely manner. As a result of these procedural violations, the HO found that the twins received services ten school days later than they should have received the services. Accordingly, the HO awarded Plaintiffs $400.00 for Nehemiah and $400.00 for Jeremiah for educational expenses Plaintiffs incurred during the time period of the violations. The HO rejected Plaintiffs' remaining contentions.

The parties appealed, and on September 2, 2004, a State Review Officer ("SRO") rendered

---

[3]For an in-depth discussion of the facts giving rise to this dispute, refer to the court's November 17, 2006, order (#51).

[4]The Hearing Officer re-characterized these issues into discrete categories organized by the relevant time periods. (*See* Elizabeth Cannon-Lynch's Aff. (#3), Ex. 1 at 3-9.)

2

a decision. The SRO reversed the HO's decision to the extent that the HO found that the District denied the twins a FAPE by failing to identify the twins as developmentally delayed in a timely manner. As such, the SRO reversed the HO's award of $400.00 for each child. However, the SRO found the District denied Jeremiah and Nehemiah a FAPE when the District failed to provide Plaintiffs with notice of a proposal to evaluate and notice of procedural safeguards in a timely manner. As a result of these failures, the SRO ordered the District to compensate Plaintiffs 50 percent of the costs Plaintiffs incurred in obtaining independent evaluations.

On September 28, 2004, Plaintiffs appealed the SRO's decision to this court. In particular, Plaintiffs argued the SRO erred in the following ways: (1) failing to award full reimbursement for the evaluations Plaintiffs provided at their own expense; (2) concluding the District denied the twins a FAPE from May 7, 2003, to August 24, 2003, but failing to award compensatory education and reimbursement; (3) failing to find the District denied the twins a FAPE from August 25, 2003, to October 29, 2003, or November 3, 2003; and (4) concluding the District did not provide the twins a FAPE from October 29, 2003, or November 3, 2003, to December 4, 2003.

On November 17, 2006, this court issued its decision denying Plaintiffs requested relief and affirming the SRO's findings in full. Plaintiffs appealed to the Ninth Circuit Court of Appeals. The Ninth Circuit upheld this court's decision except to the extent that the court found it appropriate to award Plaintiffs full reimbursements for the evaluations Plaintiffs provided at their own expense. In recognition of this determination, the District has paid Plaintiffs $1,861. Plaintiffs now seek attorneys' fees.

**II.   Discussion**

The IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). The parties agree that as the prevailing party, Plaintiffs are entitled to attorneys' fees. However, they disagree over the amount of attorneys' fees to be awarded.

1  To determine a reasonable attorneys' fee, courts in the Ninth Circuit use the "lodestar"
2  method.  Under this method, the court multiplies the reasonable hourly rate by the number of hours
3  reasonably expended in the litigation.  *Morales v. City of San Rafael*, 96 F.3d 359, 363-65 (9th Cir.
4  1995).  In calculating the lodestar figure, the court considers the following the factors: (1) the time
5  and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the
6  legal service properly; (4) the preclusion of employment to the attorney due to acceptance of the
7  case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed
8  on the client or the circumstances; (8) the amount involved and the results obtained; (9) the
9  experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case, if any; (11)
10 the nature and length of the professional relationship with the client; and (12) awards in similar
11 cases.  *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.3 (9th Cir. 2000) (*citing Kerr v. Screen
12 Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

13 There is a "strong presumption" that the lodestar figure represents a "reasonable fee" that
14 the court should enhance or reduce only in "rare and exceptional cases." *Fischer*, 214 F.3d at 1119
15 n.4 (citation omitted).  The Ninth Circuit has recognized such an exception for IDEA cases in
16 which the plaintiff achieves only partial success.  *See Aguirre v. Los Angeles Unified Sch. Dist.*,
17 461 F.3d 1114, 1118-21 (9th Cir. 2006) (finding that in an IDEA case where the plaintiff is only
18 partially successful, the court should adjust the lodestar in light of the plaintiff's degree of success).
19 Where an alteration of the lodestar figure is warranted, the court adjusts the lodestar in light of the
20 *Kerr* factors not already taken into account in the original analysis.  *Fischer*, 214 F.3d at 1119 n.4
21 (citations omitted).

22 **A.  Reasonable Hours**

23 The first step in setting a reasonable attorneys' fee is to determine the number of hours
24 Plaintiffs' attorneys reasonably expended on the litigation.  *See Morales*, 96 F.3d at 363-65.
25 Relevant *Kerr* factors include (1) the time and labor required, (2) the results obtained and the

amount involved, and (3) the novelty and difficulty of the questions involved.

Plaintiffs seek compensation for 490.30 hours its counsel Nevada Disability and Advocacy Law Center expended on this case. In addition, Plaintiffs seek compensation for 456.80 hours Plaintiffs' counsel Elizabeth Cannon-Lynch expended before Plaintiffs became clients of the Nevada Disability and Advocacy Law Center. Finally, Plaintiffs seek compensation for 410.55 hours a paralegal working for Ms. Cannon-Lynch expended on this case.[5] Thus, Plaintiffs' seek fees for 1,357.65 hours of work.

The District challenges the reasonableness of these hours in two respects.[6] First, the District argues Plaintiffs' counsel expended an unreasonable amount of time preparing for their appeal to the SRO. From April 18, 2004, the date of receipt of the HO's decision, to September 7, 2004, the date of the SRO's decision, Plaintiffs' counsel billed 190.20 hours. Plaintiffs' counsel spent this time writing a twenty-eight page appeal, a thirteen page response to the District's cross appeal, and a fourteen page motion for the admission of additional evidence, and communicating with the SRO, opposing counsel, and clients. Of the 190.20 hours worked, approximately 136 hours were spent working on the appeal brief. The District argues this was an unreasonable amount of time to spend on the appeal brief and notes that based on the number of hours spent on the appeal, Plaintiffs' counsel spent approximately 4.5 hours per page on the brief. To demonstrate this was unreasonable, the District provides an affidavit from its attorney stating that an attorney should not spend more than 2 to 2.5 hours per page when drafting a motion. (*See* Def.'s Opp. (#76), Ex. F.) The District asks that the court reduce the hours by one-third.

---

[5] The United States Supreme Court has indicated that the term "reasonable attorney's fee" as used in 42 U.S.C. § 1988, includes the work of paralegals. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). The Ninth Circuit has noted the fee provision under IDEA is "nearly identical" to that provided for under 42 U.S.C. § 1988. *See Aguirre v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114 (9th Cir. 2006). Accordingly, here the court finds it appropriate to compensate Plaintiffs' for the work of their attorneys' paralegal.

[6] The District also urges the court to reduce the hours because of the limited success Plaintiffs achieved. The court addresses these arguments below when it considers whether to reduce the lodestar amount.

5

The District's arguments are unavailing. Although Plaintiffs' counsel spent a significant amount of time preparing for the appeal, the issues involved were complex and numerous. As such, the court finds the hours expended on the appeal reasonable.

Second, the District argues Plaintiffs' counsel spent an excessive amount of time preparing for their appeal to the district court. From July 5, 2005, to April 14, 2006, Plaintiffs' counsel billed 270.3 hours. This time was primarily spent drafting Plaintiffs' appeal, a motion, and a reply, and communicating with clients and opposing counsel. The District again argues that the per-page time expended is excessive (4.42 hours). The District also notes the vast majority of time billed during this period are flat hours, indicating Plaintiffs' counsel may not have accurately recorded their time.

The court again rejects the District's per-page analysis, but shares the District's concern with counsel's apparent use of block-billing methods. Block-billing practices are "legitimate grounds for reducing or eliminating certain claimed hours . . . ." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008) (citations omitted). Accordingly, the court will reduce the hours by 15 percent to reflect the likelihood that Plaintiffs' counsel over-billed during the district court appeal process. Thus, the court will reduce the hours by 40.54 and finds 229.76 to reflect the reasonable hours expended on this phase of the litigation.

In light of the five-year span of the case, the numerous proceedings before the HO, SRO, this court, and the Court of Appeals, and the complexity of the issues involved in this case, the court finds 1,317.11 hours, which includes the reduction of 40.54 hours discussed above, to be reasonable.

**B. Reasonable Rate**

The second step in setting the reasonable attorneys' fee is to determine a reasonable hourly rate. Factors relevant to this analysis include (1) the novelty and difficulty of the questions involved, (2) the skill required, (3) the preclusion of other employment, (4) the customary fee, and (5) the experience, reputation, and ability of the attorneys. *Id.* Here, the parties agree to a

6

reasonable rate of $235.00 per hour, and the court confirms that this rate is reasonable. Likewise, the District does not dispute the proposed $75.00 per hour rate for the work of the paralegal, and the court confirms that this rate is reasonable.

### C. Lodestar Calculation

The final step in determining the reasonable attorneys' fee is to multiply the number of hours reasonably worked by the reasonable hourly rate for each person who performed the work. Here, as to Nevada Disability and Advocacy Law Center, 449.76 times $235.00 is $105,693.60.[7] With regard to Ms. Cannon-Lynch, 456.80 times $235.00 is $107,348.00. Finally, as to the paralegal's work, 410.55 times $75.00 is $30,791.25. Thus, the total attorneys' fee Plaintiffs seek is $243,832.85.

### D. Lodestar Adjustment

The District contends the court should reduce the lodestar figure because Plaintiffs have not succeeded on all of their claims. Indeed, where, as here, the plaintiff is the "prevailing party" even though he succeeded on only some of his claims, the court's inquiry does not end upon calculation of the lodestar figure. *See Hensley*, 461 U.S. at 436; *see also Aguirre*, 461 F.3d 1114 (holding *Hensley's* "degree of success" standard applies to IDEA cases). Instead, the court must address two additional questions. *Id.* at 434. First, the court must consider whether the plaintiff "fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." *Id.* Second, the court must ask whether the plaintiff "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* The court will address each of these questions below.

///

///

---

[7]The court has reduced Plaintiffs' requested hours for the Nevada Disability and Advocacy Center by 40.54 to reflect the billing judgment reduction discussed above.

7

### 1. Relationship Between Plaintiffs' Claims

A plaintiff is not entitled to fees for services rendered in pursuit of unsuccessful claims that are unrelated to the claims upon which the plaintiff succeeded. *Id.* at 435. Thus, to determine whether to adjust the attorneys' fee in this case, the court first considers whether Plaintiffs' unsuccessful claims are related to Plaintiffs' successful claims.

Plaintiffs successfully established that the District denied the twins a FAPE in violation of IDEA by failing to provide Plaintiffs with a notice of a proposal to evaluate and of procedural safeguards. Plaintiffs did not succeed in alleging that the district denied the twins a FAPE in the following ways: (1) from April 15, 2003, to May 5, 2003, by failing to locate and determine the twins' eligibility for special education and related services before they turned three, failing to notify Plaintiffs of the availability of services, failing to have an appropriate placement for the twins when they turned three, and failing to have an IEP in effect for the twins before they turned three; (2) from May 5, 2003, to August 25, 2003, by failing to evaluate and identify the twins, failing to provide Plaintiffs' with a notice of IDEA's Procedural Safeguards and Parent Rights, and failing to provide services; (3) from August 25, 2003, to October of 2003, by failing to base the twins' August IEPs on their individual educational needs, failing to provide the type of services necessary to provide a FAPE, failing to provide notice of IDEA's Procedural Safeguards and Parent Rights in a timely manner, implementing the August IEP in a manner that caused the twins to develop inappropriate behaviors, failing to provide qualified staff to implement the August IEP, failing to fully and effectively implement the August IEP, and failing to ensure the twins made meaningful progress; (4) in the October/November IEPs by relying on insufficient evaluations to create the IEPs, failing to base the IEPs on the twins' individual education needs, failing to include pertinent information in the IEPs, and unilaterally modifying the IEPs to include less specific language; and (5) including in the October/November IEPs and implementing educational programs ("TEDDY Program") that were not individualized, lacked qualified staff to implement them, failed to consider

a continuum of placement options, based on low expectations and unfounded presumptions, and various other grievances.

Claims are unrelated where the claims are based on different facts and legal theories. *Hensley*, 461 U.S. at 434.  Conversely, claims are related where they involve a "common core of facts or [are] based on related legal theories." *Id.* at 435.  "The test is whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." *Schwarz v. Sec'y of Health & Human Services*, 73 F.3d 895, 902 (9th Cir. 1995) (citation omitted) (internal quotation marks omitted).

Here, each of Plaintiffs' claims arise out of a six-month period during which Plaintiffs sought to secure for the twins educational and other services from the District.  Although the HO separated Plaintiffs' claims into discrete categories reflecting specific time periods within the six-month time span, the claims each revolve around the central goal of securing adequate services for the twins.  Indeed, each of Plaintiffs' claims is based on allegations that the District denied the twins a FAPE in violation of IDEA by failing to provide the requisite notice or services.  Thus, Plaintiff's claims arise out of a common course of conduct and are based on related legal theories.  Accordingly, the court finds that Plaintiffs' unsuccessful claims are related to Plaintiffs' successful claims.

### 2. Level of Success

Having concluded that Plaintiffs' unsuccessful claims are related to their successful claims, the court next considers Plaintiffs' degree of success.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435.  Under these circumstances, the court should not reduce the fee award "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* (citations omitted).  However, where a plaintiff has achieved "only partial or limited success, the product of hours reasonably expended on

the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith." *Id.* at 436.

Here, as outlined above, Plaintiffs succeeded in establishing the District denied the twins a FAPE in violation of IDEA by failing to provide Plaintiffs' with notice of a proposal to evaluate and of IDEA's Procedural Safeguards and Parent Rights in a timely manner. The remainder of Plaintiffs' claims were rejected.

Despite Plaintiffs' attempts to characterize their degree of success as significant, in reality Plaintiffs succeeded on only two of the numerous claims asserted. The court recognizes that IDEA's procedural safeguards are "critical" provisions and that "[p]rocedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA." *Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 891-92 (9th Cir. 2001). Nonetheless, recognizing the significance of a procedural violation of IDEA does not permit the court to ignore the relative degree of Plaintiffs' success. In light of the number and nature of claims asserted, Plaintiff did not achieve "excellent," or even great, results. Accordingly, Plaintiffs are not entitled to full compensation for their attorneys' fees, and the court must determine the appropriate amount by which to reduce the fee award.[8]

### 3. Award Reduction

When determining the appropriate reduction, the district court has discretion to exercise its equitable judgment and may "attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37. Where

---

[8]Plaintiffs rely on *Thomas v. City of Tacoma*, 410 F.3d 644 (9th Cir. 2005), in asserting that even if they were successful on only one of their claims, they are entitled to all of the requested fees. However, this reliance is flawed for several reasons. First, it ignores the instructions of the Supreme Court in *Hensley* to consider the degree of success achieved. Second, in *Thomas*, the Ninth Circuit held that the district court erred in denying any fees to a plaintiff that achieved only limited success; the court did not hold that the district court was required to award the plaintiff all of the fees sought. *Id.* at 348.

the requested fees are based on voluminous billing records, the district court need not provide an hour-by-hour analysis of the fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (citations omitted).  Thus, "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Id.* (citations omitted) (internal quotation marks omitted).  Regardless of how the court reduces the fee award, the court must remain cognizant of the relationship between the degree of success and the amount of the fee awarded and must provide a "concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437.

Here, Plaintiffs' claims were successful only to the extent that the court found an IDEA procedural violation in the District's failure to provide Plaintiffs with a timely notice of their rights under IDEA and a timely notice of a proposal to evaluate the twins.  In recognition of this violation, the court awarded Plaintiffs reimbursement of $1,861.00 for money expended in performing certain tests.

Plaintiffs seek $243,832.85 in attorneys' fees.[9]  However, Plaintiffs contend that if the court finds a reduction necessary, the court should award them three-fifths of their requested fees because they prevailed on three of the five IDEA claims originally alleged in their request for a due process hearing.  Thus, Plaintiffs ask the court to reduce the lodestar by the ratio of Plaintiffs' successful claims to their unsuccessful claims.  However, as the Supreme Court noted in *Hensley*, such "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon . . . provides little aid to determining what is a reasonable fee in light of all the relevant factors." 461 U.S. at 435 n.11.  Indeed, here, Plaintiff did not succeed completely on three out of the five original claims asserted, and instead succeeded on two sub-parts of those claims. Thus, a three-fifths reduction would not accurately reflect a reasonable fee that considers the

---

[9]This amount reflects the billing judgment reduction discussed above.

11

relationship between the degree of success and the fee awarded.  Accordingly, the court rejects Plaintiffs' proposed approach.

In contrast, where possible, the District proposes a line-item reduction removing work done on the unsuccessful claims from the fee calculation.  Where billing entries do not identify work done on successful or unsuccessful claims or where the entries identify general work applicable to all of the claims, the District asks the court to reduce the hours by fifty percent.  In addition, the District asks the court to reduce the hours by the ratio of successful to unsuccessful claims depending on the phase of the litigation during which the work was completed.

The court likewise finds the District's proposed approach ineffective.  First, the complexity of the issues presented resulted in well over one thousand hours of work by Plaintiffs' counsel.  Conducting a line-item review of Plaintiffs' counsels' billing entries is neither practical nor a justifiable use of judicial resources.  Second, the District's varying calculations of the number of issues presented in each phase of the litigation is not helpful to the court's determination of a reasonable fee because it fails to recognize the relative importance of each issue.

As a result of its previous review of the case, the court is familiar with the issues presented and the relative importance of the various issues.  In addition, the court has reviewed for a second time the HO and SRO's decisions, as well as the decision of the Ninth Circuit.  The court has also reviewed the relevant law, the arguments of the parties, and the billing information Plaintiffs submitted.  Based on this review, the court finds it appropriate to award Plaintiffs' 20 percent of the fee sought.

The court finds this reduction appropriate because the degree of Plaintiffs' success was limited.  As discussed above, although a procedural violation of IDEA is undoubtedly significant, Plaintiffs' successful procedural violation claims were relatively minor portions of an expansive suit that largely sought to establish substantive violations of IDEA.

A review of the relief sought by Plaintiffs demonstrate the relative significance of their

successful claims. Through their various claims Plaintiffs primarily sought the following relief: (1) reimbursement for evaluations and costs incurred in placing the twins in a private education center for several months in 2003; (2) compensatory education due to the denial of a FAPE for various periods in 2003; (3) new IEPs; and (4) an order specifying the requirements of an appropriate placement for the twins during the 2003/2004. Plaintiffs succeeded in establishing that the District violated IDEA by failing to provide notice of their rights and of a proposal to evaluate the twins. As a result of these procedural failures, Plaintiffs were awarded reimbursement for the costs of evaluating the twins. Plaintiffs were not awarded compensatory education, reimbursement for costs incurred in placing the twins in a private education center, or any of the additional relief sought.

Further, the court believes that an award of 20 percent of Plaintiffs' fees adequately and fairly reflects the relative degree of their success while also recognizing the importance, complexity and inter-relationship between Plaintiffs' claims. Plaintiffs' claims arose out of a common and related course of conduct, and although the District's procedural violation was not significant in relationship to Plaintiffs' other claims, a procedural violation of IDEA is nonetheless important and clearly warrants recognition.

Plaintiffs seek compensation for 1,317.11 hours of worked performed by their attorneys on this case.[10] Of this total, Nevada Disability and Advocacy Law Center expended 449.76 hours, Ms. Cannon-Lynch expended 456.80 hours, and Ms. Cannon Lynch's paralegal expended 410.55 hours. The court will award Plaintiffs 20 percent of the hours each of these entities and individuals expended.

Thus, the court will compensate Plaintiffs for 89.95 hours for work completed by Nevada Disability and Advocacy Center. At a rate of $235.00, this results in an award of $21,138.25 for the center's work. The court will compensate Plaintiffs for 91.36 hours for Ms. Cannon-Lynch's work. At a rate of $235.00, the court will award Plaintiffs $21,469.60 for Ms. Cannon-Lynch's

---

[10]This number reflects the billing judgment reduction discussed above.

work.  Finally, the court will compensate Plaintiffs for 82.11 hours for Ms. Cannon-Lynch's paralegal's work.  At a rate of $75.00, the court will award Plaintiffs $6,158.25 for the paralegal's work.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Attorneys' Fees (#73) is hereby GRANTED in part.  Plaintiffs are awarded $21,138.25 for work completed by Nevada Disability and Advocacy Center, $21,469.60 for work completed by Ms. Cannon-Lynch, and $6,158.25 for the paralegal's work.  The total fee awarded is $48,766.10.

IT IS SO ORDERED.

DATED this 24th day of August, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE